UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-MC-20896-MOORE/Elfenbein

In re

**ANDREY GRIGORYEVICH GURIEV**,

        Applicant,

**Pursuant to 28 U.S.C. § 1782 for
Judicial Assistance in Obtaining
Evidence for Use in a Foreign Proceeding**.

_____/

**ORDER ON ANDREY GRIGORYEVICH GURIEV'S *EX PARTE* APPLICATION FOR
JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN
PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

       **THIS CAUSE** is before the Court on Applicant Andrey Grigoryevich Guriev's *Ex Parte* Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "Application"), ECF No. [1]. The Honorable K. Michael Moore referred this matter to me "to take all necessary and proper action as required by law and/or to issue a Report and Recommendation with respect to the" Application. *See* ECF No. [7]. For the reasons explained below, the Application, **ECF No. [1]**, is **GRANTED**.

**I.   BACKGROUND**

       In the Application, Applicant asks the Court for an order allowing him to serve 777 Partners LLC ("777 Partners") and its CEO Joshua Wander ("Wander") with "the subpoenas attached" to the Application. *See* ECF No. [1] at 1; ECF No. [1-1] at 6. Applicant explains the "requested relief is for the purposes of obtaining necessary discovery in aid of three ongoing foreign proceedings filed by Applicant in the United Kingdom Commercial Court pursuant to Section 51 of the Senior Courts Act of 1981 seeking litigation costs from Mr. Alexander Gorbachev and non-party litigation

funds ('Section 51 Proceeding') and a contemplated civil proceeding in England for wrongful and malicious prosecution (the 'Contemplated English Civil Proceeding').'' *See* ECF No. [1] at 1. Applicant notes he "is the movant in the Section 51 Proceeding and the anticipated plaintiff in the Contemplated English Civil Proceeding." *See* ECF No. [1] at 2. He also explains that his "tailored requests relate to the issues raised in the Section 51 Proceeding and the Contemplated English Civil Proceeding." *See* ECF No. [1] at 2.

In a Memorandum in Support of the Application (the "Supporting Memo"), Applicant further explains that in 2015 "Gorbachev launched a series of lawsuits against Applicant" in the UK and Cyprus in which he claimed to own part of Applicant's fertilizer company. *See* ECF No. [1-1] at 6. More specifically, Gorbachev claimed Applicant had, through "a series of 'oral trusts,'" granted Gorbachev shares of Applicant's company worth more than one billion dollars. *See* ECF No. [1-1] at 7. Applicant successfully defended those lawsuits, which third parties funded, at least in part. *See* ECF No. [1-1] at 6–8. Among those funders was a Florida-based company called Sphinx Funding LLC, which is "a related entity" to 777 Partners. *See* ECF No. [1-1] at 9. In a witness statement to the UK High Court, Wander revealed "that 777 Partners, on behalf of Sphinx, had paid certain of" Gorbachev's "litigation costs, [after-the-event] insurance, and also living expenses" amounting to the equivalent of $14,940,000. *See* ECF No. [1-1] at 9.

After Applicant successfully defended against Gorbachev's lawsuits in the UK and Cyprus, the UK High Court ordered Gorbachev to pay Applicant $15,110,000 in interim costs. *See* ECF No. [1-1] at 7. With the Application, Applicant seeks to depose Wander and collect written discovery from Wander's company 777 Partners "to discover information relevant to the identities and ultimate sources of the funds provided by the third-party funders who financed Mr. Gorbachev's failed, frivolous, and potentially fraudulent claims, as well as the true motives and

objectives in bringing those claims." *See* ECF No. [1-1] at 6.  Applicant seeks discovery from 777 Partners and Wander "to ensure that all relevant parties are identified and added to the Section 51 Proceeding and to develop facts for the Contemplated English Civil Proceeding."  *See* ECF No. [1-1] at 9.  He "has reason to believe" that 777 Partners has "relevant evidence about the extent of its involvement in the funding arrangements with" Gorbachev "and the existence of additional but undisclosed funders," but the UK High Court cannot compel 777 Partners to produce discovery materials because it "is a U.S.-based entity that is not a party to the Section 51 Proceeding."  *See* ECF No. [1-1] at 9–10.  Because the requested evidence is "available in this District," Applicant filed the Application to obtain it.  *See* ECF No. [1-1] at 10.

As to the specific materials sought, "from 777 Partners, Applicant seeks (i) document discovery relating to 777 Partners' general funding standards and policies, organizational chart of 777 Partners, corporate meeting minutes, and documents and communications, including business, banking, underwriting, and re-insurance records and transactions relevant to Sphinx's agreement in relation to" Gorbachev "and associated individuals; and (2) a deposition from the person most qualified to represent 777 [Partners] as a corporate entity."  *See* ECF No. [1-1] at 18.  From Wander, "Applicant seeks (1) document discovery relating to" Wander's "association with Sphinx," Gorbachev, "the UK Litigation and associated funders, and (2) a deposition related to these same issues as well as 777 Partners' normal underwriting standards, whether" Gorbachev's "litigation met these standards, and any motivations for entering into these arrangements."  *See* ECF No. [1-1] at 18.  Applicant asserts that this discovery "will narrow the issues" in the Section 51 Proceeding "and aid in the determination of which funds" Gorbachev "spent on litigation and are thus recoverable" to satisfy the $15,110,000 in interim costs the UK High Court ordered Gorbachev to pay Applicant.  *See* ECF No. [1-1] at 7, 18.  And the discovery will help determine

3

whether any of Gorbachev's "funders" are "responsible for bringing the UK Litigation without any true belief in its merits" and thus should be co-defendants with Gorbachev in the Contemplated English Civil Proceeding.  *See* ECF No. [1-1] at 18.

Applicant argues the Court should grant the Application because it meets all four statutory requirements under § 1782 and all four discretionary factors the Supreme Court set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  *See* ECF No. [1] at 2.  Specifically, as to the statutory requirements, Applicant argues: (1) he is an interested person because he is a party to the Section 51 Proceeding and the Contemplated English Civil Proceeding; (2) the Application seeks documentary evidence; (3) the discovery sought is for use in the foreign Section 51 Proceeding and Contemplated English Civil Proceeding; and (4) Respondents 777 Partners and Wander are found in this District.  *See* ECF No. [1] at 2.  And as to the discretionary factors, Applicant argues: (1) Respondents are not parties to either the Section 51 Proceeding or the Contemplated English Civil Proceeding; (2) the UK High Courts will likely be receptive to this Court's judicial assistance; (3) Applicant is not attempting to circumvent foreign proof-gathering restrictions; and (4) the discovery sought is not intrusive or burdensome.  *See* ECF No. [1] at 2.

## II.    LEGAL STANDARDS

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp.*, 542 U.S. at 247. The "history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (emphasis and quotation marks omitted).

"A district court has the authority to grant an application for judicial assistance if the

following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (footnote omitted) (quoting § 1782(a)). "If these requirements are met, then § 1782 'authorizes, but does not require, a federal district court to provide assistance.'" *Id.* at 1332 (quoting *Intel*, 542 U.S. at 255); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory.").

"Once the prima facie [statutory] requirements are satisfied, the Supreme Court in *Intel* noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65). None of these factors is required or automatically dispositive — they simply "bear consideration in ruling on a § 1782(a) request." *See Intel*, 542 U.S. at 264. In fact, even if a court concludes an application contains "unduly intrusive or burdensome requests," it may still exercise its discretion to grant the application

Case 1:25-mc-20896-KMM   Document 10   Entered on FLSD Docket 07/11/2025   Page 6 of 12

CASE NO. 25-MC-20896-MOORE/Elfenbein

because those specific requests "may be rejected or trimmed." *Id.* at 265.

Finally, though the Supreme Court has not specifically listed it as a factor in the analysis, sometimes courts look at how granting or denying a § 1782 application would impact international comity concerns. That's because "the animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022); *see also In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (noting "the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts").

## III.   DISCUSSION

### A. Applicant Has Met the Four Requirements of § 1782

As noted above, the four factors set out in the statute govern the first step in the § 1782 analysis. *See In re Clerici*, 481 F.3d at 1331–32. Here, Applicant has met each of them.

First, an "interested person" is making Applicant's request. *See* § 1782(a); *In re Clerici*, 481 F.3d at 1331. Applicant is the movant in the Section 51 Proceeding and the anticipated plaintiff in the Contemplated English Civil Proceeding. *See* ECF No. [1] at 2. That makes Applicant a party to both relevant foreign proceedings, and as the Supreme Court has noted, "litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782." *See Intel*, 542 U.S. at 256 (alteration adopted).

Second, Applicant's request "seek[s] evidence," including the "'testimony or statement' of a person" and the production of "'a document or other thing.'" *See In re Clerici*, 481 F.3d at 1331–32 (quoting § 1782(a)). Indeed, the Supporting Memo explicitly notes that Applicant seeks an order directing 777 Partners and its CEO Wander to "produce documents and" compelling

"Wander to be available for a deposition." *See* ECF No. [1-1] at 6.

Third, the evidence Applicant seeks is "for use in a proceeding in a foreign or international tribunal." *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. As Applicant explains in the Application, "the discovery sought is for use in the Foreign Section 51 and Contemplated English Civil Proceedings." *See* ECF No. [1] at 2. And as Applicant expounds in the Supporting Memo, he "has reason to believe that 777 Partners is in possession of relevant evidence about the extent of its involvement in the funding arrangements with Mr. Gorbachev and the existence of additional but undisclosed funders." *See* ECF No. [1-1] at 9. Those details are relevant to the Section 51 Proceeding, in which Applicant seeks to recover from Gorbachev and his funders the $15,110,000 in interim costs the UK High Court awarded Applicant after he successfully defended against Gorbachev's lawsuits, because they "will help" that Court "determine whether additional funders exist and the nature and extent of the funding activities undertaken by the current parties to that proceeding." *See* ECF No. [1-1] at 7, 21.

Those details are also relevant to the Contemplated English Civil Proceeding because they "will aid in determining the correct parties against whom the malicious prosecution claim will be brought, including any as-yet-unnamed funders who aided" Gorbachev in bringing his lawsuits. *See* ECF No. [1-1] at 22. And the Contemplated English Civil Proceeding is "within reasonable contemplation" because "Applicant has already retained UK counsel to assess the feasibility of the contemplated malicious prosecution action, and that counsel has determined the action to be legally meritorious." *See* ECF No. [1-1] at 22.

Finally, the entity from which Applicant seeks the evidence "resides or is found" in this District. *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. As the Supporting Memo notes, "777 Partners is a company registered in Delaware with its headquarters in Miami, according to its

website and statements of" Wander, and "Wander resides in Miami-Dade County and leads 777 Partners." *See* ECF No. [1-1] at 22.  When a corporation "has an office and does business in Miami," it is found in the Southern District of Florida for purposes of § 1782. *See Consorcio Ecuatoriano*, 747 F.3d at 1269.  As further support, "Applicant seeks documents and transactions that are likely located in this district, as 777 Partners paid several installments of Sphinx's litigation funds for the UK Litigation," and "Wander signed the Litigation Funding Agreement on Sphinx's behalf." *See* ECF No. [1-1] at 22. The Court agrees that "specific records are located and may be easily produced in this District." *See* ECF No. [1-1] at 22.

For those reasons, the Court finds that Applicant has satisfied the four statutory factors under § 1782.

### B. The *Intel* Factors Weigh in Favor of Granting the Application

Once the statutory requirements are satisfied, the discretionary factors the Supreme Court set out in *Intel* govern the second step in the § 1782 analysis. *See* 542 U.S. at 264–65; *In re Clerici*, 481 F.3d at 1334. Here, each of the four *Intel* factors weighs in favor of granting the Application.

First, the entity from which Applicant seeks the discovery is not a participant in the foreign proceeding. *See Intel*, 542 U.S. at 264; *In re Clerici*, 481 F.3d at 1334. As the Supreme Court has explained, "when the person from whom discovery is sought is a participant in the foreign proceeding," the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*  As the Supporting Memo explains, 777 Partners and

Wander "are not parties to either of the two proceedings (the Section 51 Proceeding or the Contemplated English Civil Proceeding)," so "Applicant has no mechanism other than a Section 1782 application to obtain the highly relevant evidence" in their "possession, custody, and control." *See* ECF No. [1-1] at 24.  For that reason, the first *Intel* factor weighs in favor of granting Applicant § 1782(a) aid.

Second, the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all suggest that the Application should be granted. *See Intel*, 542 U.S. at 264; *In re Clerici*, 481 F.3d at 1334.  The UK Court uses an adversary system like that of this country, and the Section 51 Proceeding and the Contemplated English Civil Proceeding are civil litigations in which discovery is permitted.  *See* ECF No. [1-1] at 26; *In re Application of Salem*, No. 23-CV-23186, 2024 WL 4464288, at *11–12 (S.D. Fla. Aug. 28, 2024), *R.&R. adopted sub nom. In re Salem*, No. 23-CV-23186-KMM, 2024 WL 4314771 (S.D. Fla. Sept. 27, 2024).  And as Applicant explains, "the UK government is receptive to U.S. federal court judicial assistance," and courts "in this District have repeatedly found English courts to be receptive to discovery assistance." *See* ECF No. [1-1] at 26 (quotation marks omitted).  Because it appears the UK Court would be receptive to evidence gathered through a § 1782(a) proceeding, the second *Intel* factor weighs in favor of granting the Application.

Third, the Application does not "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334.  As an initial matter, Applicant expressly states that he "seeks this discovery in good faith and is not attempting to circumvent the foreign tribunals' proof gathering restrictions." *See* ECF No. [1-1] at 27.  And Applicant argues that "both English

9

and Cypriot courts routinely welcome discovery obtained under Section 1782, and there is no indication that evidence discovered pursuant to this [A]pplication would not be similarly welcomed." *See* ECF No. [1-1] at 27.

It is true that, as noted above, courts in this District have repeatedly found English courts to be receptive to discovery assistance through § 1782.[1]  *See, e.g.*,  *In re Application of Salem*, 2024 WL 4464288, at *12; *In re Novoship (UK) Ltd.*, No. 20-60876-MC, 2020 WL 3286308, at *3 (S.D. Fla. June 18, 2020) ("[T]here is no indication that the courts of the United Kingdom would be unreceptive to American evidence and, in fact, § 1782 is routinely used to obtain evidence for proceedings in that country."). And Applicant cannot procure the requested discovery using the UK Court's own procedures because 777 Partners "is a U.S.-based entity that is not a party to the Section 51 Proceeding." *See* ECF No. [1-1] at 10.  Similarly, Wander is "a U.S. resident located in this District" who is not a party to the Section 51 Proceeding. *See* ECF No. [1-1] at 10, 19.  As a result, the UK Court "cannot compel" them to produce discovery materials. *See* ECF No. [1-1] at 10. Because the "Application is brought in good faith and does not seek to circumvent the discovery procedures of the Section 51 Proceeding and the Contemplated English Civil Proceeding," *see* ECF No. [1-1] at 28, the third *Intel* factor weighs in favor of granting the Application.

Finally, Applicant's request is not unduly intrusive or burdensome. *See Intel*, 542 U.S. at

---

[1] Because the two relevant proceedings are (or will be) litigated in the UK, the UK Court's receptiveness to discovery materials obtained through § 1782 is the critical consideration here. But to the extent the Cypriot Court's receptiveness to § 1782 discovery materials matters, it appears that court would likewise accept them.  *See, e.g.*, *Weber v. Finker*, No. 3:07-MC-27 J32MCR, 2007 WL 4285362, at *7 (M.D. Fla. Nov. 30, 2007) ("There is not sufficient evidence to believe Petitioner is trying to circumvent any Cypriot proof-gathering restrictions or other policies. . . . As such, the Court finds discovery pursuant to § 1782(a) is appropriate for the Cyprus case as well."); *cf. Weber v. Finker*, 554 F.3d 1379, 1385 n.4 (11th Cir. 2009) (noting that "the Magistrate Judge made careful rulings on the scope of discovery" and that the district court's adoption of that "careful analysis" was not an abuse of discretion).

265; *In re Clerici*, 481 F.3d at 1334. The request is narrowly tailored as to both the subpoenaed non-parties and the time period: the Application seeks information about "one company, 777 Partners, and its CEO," Wander, "for the discrete period of March 2021 through present." *See* ECF No. [1-1] at 29.  None of the requested discovery is unusual; instead, "[a]ll the materials sought are of the kind that would be kept in the normal course of business," *see* ECF No. [1-1] at 29, so they should not be particularly difficult to gather.  Indeed, the specific requests relate to general business policies, organizational documents, corporate meeting minutes, communications about the funding agreement with Gorbachev and associated individuals, normal underwriting standards, and whether Gorbachev's litigation met those standards. *See* ECF No. [1-1] at 18.  As a result, the Court agrees with Applicant that the § 1782(a) requests are narrowly tailored and "not unduly intrusive or burdensome," *see* ECF No. [1] at 2; ECF No. [1-1] at 28–29, so the fourth *Intel* factor weighs in favor of granting the Application.

For those reasons, the Court finds that all four *Intel* factors weigh in favor of granting the Application for § 1782 aid.

### C. Granting the Application Would Further the Policy Underlying § 1782

As a final consideration, the Court evaluates whether granting the application would further the policy underlying § 1782, which is to encourage international comity. *See ZF Auto.*, 596 U.S. at 632; *In re Pimenta*, 942 F. Supp. 2d at 1289. Allowing Applicant to marshal the power of our courts to assist him in gathering evidence to use in the Section 51 Proceeding and the Contemplated English Civil Proceeding aligns with "Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *See Consorcio Ecuatoriano*, 747 F.3d at 1269 (emphasis and quotation marks omitted). And it would certainly "encourage[e] foreign countries to provide reciprocal assistance to our courts." *See In re Pimenta*, 942 F. Supp. 2d at 1289. As a

result, the Court finds that granting the Application would further the international comity concerns that underlie § 1782.

IV.   **CONCLUSION**

Because Applicant has satisfied the four statutory factors under § 1782, all four *Intel* factors weigh in favor of granting the Application, and granting the application would further the international comity policy underlying § 1782, it is **ORDERED and ADJUDGED** as follows:

1. The Application, ECF No. [1], is **GRANTED**;

2. Applicant is authorized to issue subpoenas for documents and testimony in the form of the subpoenas attached to the Application as Exhibits B, C, D, and E, *see* ECF No. [1-4]; ECF No. [1-5]; ECF No. [1-6]; ECF No. [1-7];

3. Discovery shall be conducted in accordance with the Federal Rules of Civil Procedure;

4. The Court reserves jurisdiction to enter further orders that are necessary and proper to enforce this Order; and

5. Applicant shall file a status report **on or before October 10, 2025**, indicating the status of the discovery identified in the Application and whether this matter may be closed.

**DONE AND ORDERED** in Chambers in Miami, Florida on July 10, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record